IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Joseph B.,[1]

        Plaintiff,

    v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

No. 6:20-cv-01376-HZ

OPINION & ORDER

Mark A. Manning
Katherine Eitenmiller
Harder, Wells, Baron & Manning, P.C.
474 Willamette Street
Eugene, OR 97401

    Attorneys for Plaintiff

Renata Gowie
Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case.

1 – OPINION & ORDER

L. Jamala Edwards
David Burdett
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

    Attorneys for Defendant

HERNÁNDEZ, District Judge:

    Plaintiff Joseph B. brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits ("DIB") and supplemental security income ("SSI"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1383(c)(3)). The Court affirms the Commissioner's decision.

## PROCEDURAL BACKGROUND

    Plaintiff applied for DIB and SSI on September 19, 2017, alleging a disability onset date of March 15, 2017. Tr. 203.[2] Plaintiff's date last insured ("DLI") is December 31, 2021. Tr. 234. His application was denied initially and on reconsideration. Tr. 120-129, 132-137.

    On June 13, 2019, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ"). Tr. 7-41. On July 3, 2019, the ALJ found Plaintiff not disabled. Tr. 58. The Appeals Council denied review. Tr. 1-6.

## FACTUAL BACKGROUND

    Plaintiff alleges disability based on severe back pain, morbid obesity, right eye blindness, and sleep apnea. Tr. 238. At the time of his alleged onset date, he was 39 years old. Tr. 206. He

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 11.

has a high school education and past relevant work experience as an executive chief, food service manager, and cook. Tr. 56-57.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work."

3 – OPINION & ORDER

20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets their burden and proves that the claimant can perform other work that exists in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

**THE ALJ'S DECISION**

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after his alleged onset date through his date last insured. Tr. 50. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: "morbid obesity, degenerative disc disease with history of back surgery, and loss of vision in the right eye." Tr. 51. However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 51. At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) with the following limitations:

> [T]he claimant can occasionally stoop, crouch, kneel, balance, and climb ramps and stairs. He can never crawl or climb ladders, ropes, or scaffolds. He should avoid tasks that require excellent depth perception. He should have no exposure to vibration or to hazards, such as dangerous machinery or unprotected heights.

Tr. 51-52. Because of these limitations, the ALJ concluded that Plaintiff could not perform his past relevant work. Tr. 56. But at step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as "addresser (DOT 209.587-010), with 11,084 jobs nationally, cutter/paster (DOT 249.587-014), with 20,051 jobs

nationally, and patcher (DOT 723.687-010), with 42,200 jobs nationally." Tr. 57. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 58.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

## DISCUSSION

Plaintiff argues that the ALJ erred in (1) rejecting Plaintiff's subjective symptom testimony and (2) rejecting the medical of opinion of Plaintiff's treating physician, Dr. Brock Millet.

**I.    Subjective Symptom Testimony**

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). Once a claimant shows an underlying impairment and a causal

5 – OPINION & ORDER

relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008) (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on clear and convincing reasons") (quotation marks and citation omitted); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (the ALJ engages in a two-step analysis for subjective symptom evaluation: First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged"; and second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms.") (quotation marks and citations omitted).

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

At the first step in analyzing Plaintiff's subjective symptom testimony, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 52. But at the second step, the ALJ determined that Plaintiff's statements regarding the "intensity, persistence and limiting effects" of those symptoms were not consistent with the medical evidence. Tr. 52. Plaintiff argues that the ALJ did not provide clear and convincing reasons for this conclusion and for rejecting Plaintiff's symptom testimony. Specifically, Plaintiff alleges that the ALJ did not "link [Plaintiff's] symptom testimony to specific medical records and explain why those records contradicted [his] symptom testimony." Pl. Brief 7.

The parties agree that the primary cause of Plaintiff's functional limitations is his back pain. In his disability application, Plaintiff reported that "he can no longer get off a couch or chair without help" and that he needs help walking to the restroom. Tr. 267. He claimed that his wife must help him get off the toilet and get in and out of the bathtub. Tr. 268-269. Plaintiff stated that he has severe pain when he walks or stands and that he cannot sleep for more than one hour at a time because of back pain. Tr. 268-269.

The ALJ first concluded that the objective medical evidence does not support the degree of limitation alleged by Plaintiff. In explaining his conclusion, the ALJ described the reported findings from Plaintiff's March 2016 lumbar spine MRI. The ALJ's opinion states:

> MRI images of the lumbar spine taken in March 2016 showed multilevel degenerative changes including a disc herniation at L3-4, with "moderate" right lateral recess narrowing and "mild to moderate" right neural foraminal stenosis, and a "mild" osteophyte disc complex at L5-S1 without evidence of spinal [] foraminal narrowing. The images also showed the L1-2, L2-3, and L4-5 discs to be "normal for age."

Tr. 52. The ALJ then determined that the degenerative changes described in the MRI report "are not of the nature or severity . . . to cause disabling levels of pain." Tr. 53.

7 – OPINION & ORDER

In his objections, Plaintiff describes the same MRI findings[3] and then states that "[t]he ALJ notably declined to acknowledge this imaging study." Pl. Brief 9. As noted above, the ALJ acknowledged, considered, and described Plaintiff's MRI findings, and he explained why he believes the MRI findings are not consistent with Plaintiff's alleged severity of physical limitation. Plaintiff appears to disagree with the ALJ's interpretation of the MRI findings as well as the ALJ's conclusion regarding their relation to Plaintiff's alleged impairment.

When a conflict exists regarding the interpretation of particular objective evidence, the Court defers to the ALJs determination so long as it is supported by substantial evidence. *See Treichler v. Comm. of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014) ("[T]he Commissioner's findings . . . as to any fact, if supported by substantial evidence, shall be conclusive."). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Trevizo v. Berryhill*, 871 F.3d 664, 674-75 (9th Cir. 2017) (quotation marks and citations omitted). The Court finds that the ALJ's conclusion that the severity of Plaintiff's limitations are not supported by the MRI findings to be reasonable and supported by substantial evidence.

The Court also finds the ALJ did not err in determining that other objective evidence is inconsistent Plaintiff's asserted degree of limitation. The ALJ notes that despite Plaintiff's alleged need for assistance with walking, a nurse practitioner reported the following examination in June 2017:

---

[3] Plaintiff also describes the additional detail of "a 7 mm right paracentral disc herniation with an extruded disc fragment that extended superiorly by about 12mm" included in the MRI report. Pl. Brief 9; Tr. 347.

> Walks in an upright manner. Gait is smooth. No limp or altered movements. No obvious signs of distress. Able to get up and down on the exam bed without any difficulties or grimacing.

Tr. 358. In December 2017, the same nurse practitioner reported: "He is walking with a cane today but steady and when he left he was actually carrying the cane not using it." Tr. 370. Similarly, in June 2018 and December 2018, his treating physician Dr. Millet reported that Plaintiff had a "normal gait." Tr. 407, 597. These reports by the treating providers conflict with Plaintiff's testimony stating that he requires assistance with standing and walking. The Court finds that the ALJ did not err in concluding that Plaintiff's alleged degree of limitation is not supported by the objective medical evidence.

      The Court recognizes that an ALJ may not reject subjective symptom testimony "solely because it is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). But objective medical evidence is still a relevant factor in determining the credibility of a claimant's symptoms testimony. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). And here, the ALJ made additional specific findings to support his credibility determination. The ALJ found that Plaintiff's "course of treatment does not support his allegation of disability." Tr. 53. Specifically, the ALJ notes that Plaintiff's conservative treatments, limited pain medication, and refusal to try physical therapy "are not persuasive of disabling physical symptoms or limitations." Tr. 54. In March 2016, a surgeon recommended microdiscectomy surgery as treatment for Plaintiff's back pain. Plaintiff did not undergo surgery. When he was seen in June 2017 for ongoing chronic back pain, a nurse

9 – OPINION & ORDER

practitioner noted that Plaintiff was "not interested in surgery" and "he flat out refused" physical therapy. Tr. 358.

"An ALJ is permitted to consider lack of treatment in his credibility determination." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005); *See Molina*, 674 F.3d at 1113 ("[T]he ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment."). Thus, the ALJ did not err by considering Plaintiff's reluctance to undergo surgery and refusal to participate in physical therapy in determining that Plaintiff's limitations are not as severe as he alleges and are inconsistent with medical evidence.

Plaintiff also asserts that the ALJ erred by not sufficiently considering how his morbid obesity contributes to his limitations.[4] But the record shows that the ALJ considered both the effect of Plaintiff's obesity on his ability to perform necessary physical activity in the work environment and how fatigue caused by obesity would impact Plaintiff's ability to sustain work activity. Tr. 53. In addition, despite Plaintiff's assertion to the contrary, the ALJ "considered the likely aggravating effect of the claimant's obesity on his other impairments, particularly his lumbar spine degenerative disc disease[.]" Tr. 53. Thus, the ALJ found that combination of Plaintiff's obesity and back pain limits him to only sedentary work. Reviewing the record as a whole, the Court finds that the ALJ's determination of the effect of Plaintiff's obesity on his ability to work is supported by substantial evidence.

---

[4] According to the U.S. Department of Health & Human Services, persons with a body mass index ("BMI") greater than 30 are obese. Tr. 53. Plaintiff's BMI reported was 65.2 in June 2017 and 64.6 in December 2018. Tr. 358, 597.

Given that the ALJ properly concluded that neither objective medical evidence nor Plaintiff's course of treatment are consistent with Plaintiff's alleged limitations, the ALJ provided clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony.

## II.    Medical Opinion Evidence

In formulating the RFC, the ALJ weighed the opinions of Disability Determination Service ("DDS") consultants Neal E. Berner, M.D and J. Scott Pritchard, D.O. against the medical opinion of Dr. Brock Millet, Plaintiff's treating physician. The ALJ considered a statement by Dr. Millet from June 2018 regarding Plaintiff's limitations and found that the statement had "limited persuasive value." Tr. 55-56. Dr. Millet opined that Plaintiff can only stand or sit "for a couple of hours," must change position during that time, and must then "lie down to take the pressure off his back." Tr. 400. Dr. Millet stated that Plaintiff would need to take breaks once per hour during an 8-hour workday. Tr. 402. He also predicted that Plaintiff's impairments would cause him to miss work more than four days per month. Tr. 403. In contrast, Dr. Berner and Dr. Pritchard concluded that Plaintiff could stand and/or walk for about six hours in an 8-hour workday and retained the capacity to perform light work. Tr. 86-90, 102-105. The ALJ did not incorporate the limitations expressed in Dr. Millet's opinion when he formulated the RFC. Plaintiff objects to the ALJ's rejection Dr. Millet's opinion in favor of the consultative opinions of Dr. Berner and Dr. Pritchard.

Because Plaintiff filed her claim after March 27, 2017, new regulations about weighing medical opinion evidence apply. *See* Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. Under the new regulations, ALJs are no longer required to give deference to any medical opinion,

11 – OPINION & ORDER

including treating source opinions. *Id.* Instead, the agency considers several factors. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). These are: supportability, consistency, relationship to the claimant, specialization, and "other factors." 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The "most important" factors in the evaluation process are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Under this framework, an ALJ must explain how supportability and consistency were considered and may explain how the other factors were considered. 20 C.F.R §§ 404.1520c(b)(2), 416.920c(b)(2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ must explain how the other factors were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

Although the new regulations remove the hierarchy of medical sources, they do not relieve the ALJ of the obligation to consider the opinions from each medical source. In making a non-disability determination, an ALJ "must consider the medical record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter*, 503 F.3d at 1035). For each medical source, an ALJ must articulate how they considered the supportability and consistency factors. *See id.* at 1012-13 ("[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it[.]").

The ALJ found Dr. Millet's statement to be unpersuasive because his expressed limitations for Plaintiff were not based on objective medical evidence, were out of proportion to the MRI findings, and conflicted with Dr. Millet's own treatment notes. As with his subjective symptom testimony, Plaintiff uses the MRI report to show that the ALJ erred in rejecting Dr.

Millet's opinion. Plaintiff relies on the reported the L3-L4 disc herniation to conclude that the MRI supports Dr. Millet's statement. The ALJ interprets the same MRI findings to conclude that "the degenerative changes to the claimant's lumbar spine are not of the nature or severity . . . to cause disabling levels of pain." Tr. 53. After reviewing these MRI findings, both Dr. Berner and Dr. Pritchard disagreed with Dr. Millet's opinion and concluded that Plaintiff had greater capacity to work and fewer limitations than what the ALJ included in the RFC.

The Court cannot substitute its own judgment for the reasonable interpretation of medical evidence by an ALJ. *See Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2008) ("Where . . . the record contains conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict[.]"). "The ALJ is responsible for determining credibility, resolving conflicts in medical evidence, and resolving ambiguities." *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020). The ALJ reasonably determined that the limitations offered by Dr. Berner and Dr. Pritchard are more consistent with Plaintiff's MRI findings than those included in the statement by Dr. Millet.

In addition, the ALJ reasonably found that Dr. Millet's statement regarding Plaintiff's limitations contradicted his own objective findings. Dr. Millet's clinical encounter notes from June 2018 and December 2018 show that Plaintiff could walk normally. Tr. 407, 597. During those visits, Dr. Millet did not prescribe additional pain medication or recommend any other treatment for Plaintiff's back pain. His only recommendation was for Plaintiff to increase exercise so that he would continue to lose weight.

Thus, the ALJ did not err in finding that Dr. Millet's opinion about Plaintiff's limitations is not supported by the objective medical evidence. The ALJ reasonably concluded that Dr. Millet's opinion conflicted with the opinions of Drs. Berner and Pritchard, whose opinions he

13 – OPINION & ORDER

afforded greater weight. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (holding that the ALJ is the final arbiter in resolving conflicts in medical testimony). Accordingly, the ALJ's rejection of Dr. Millet's opinion is supported by substantial evidence.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED: \_\_February 4, 2022\_\_\_\_\_.

_____
MARCO A. HERNÁNDEZ
United States District Judge